**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                 Criminal No. 08-20669-4
                                 Civil No. 13-14343

CARLOS A. SOLER-NORONA,

      Defendant.

_____/

**OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE,**
**DENYING MOTION FOR APPOINTMENT OF COUNSEL,**
**DENYING APPLICATION TO PROCEED *IN FORMA PAUPERIS***
**DENYING REQUESTS FOR TRIAL TRANSCRIPTS,**
**AND DENYING CERTIFICATE OF APPEALABILITY**

On October 10, 2013, Defendant Carlos Soler-Norona filed a *pro se* motion to vacate sentence pursuant to 28 U.S.C. § 2255. Defendant is currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, serving a sentence in state custody. In the case at issue here, a jury convicted Defendant of three counts relating to a large-scale conspiracy to possess and distribute cocaine. The court sentenced Defendant to 136 months' imprisonment upon his release from state custody.

In his motion to vacate, Defendant raises seven grounds of error which fall into two general categories: ineffective assistance of counsel claims and unfair trial claims. The Government responds that Defendant failed to demonstrate ineffective assistance of counsel and procedurally defaulted his other claims. Defendant has also filed a request for appointment of counsel, an application to proceed *in forma pauperis,* and

1

two requests for court transcripts.  For the reasons set forth below, the court will deny the motion to vacate sentence, deny the request for appointment of counsel, deny the application to proceed *in forma pauperis*, deny the requests for trial transcripts, and deny a certificate of appealability.

## I.  BACKGROUND

On January 8, 2009, the Government indicted Defendant on three counts: conspiracy to distribute and to possess with intent to distribute cocaine, 21 U.S.C. §§ 846 & 841(a)(1); aiding and abetting possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and the unlawful use of a communication facility, 21 U.S.C. § 843(b).  This indictment named Defendant and eight other men as members of a conspiracy to import, possess, and distribute narcotics.  The ringleader of the conspiracy, Javier Lara-Tella, oversaw and coordinated the importation of multi-kilograms of cocaine from Mexico.  Lara-Tella and his co-conspirators then distributed the cocaine to buyers throughout the metro-Detroit area.  The Government described Defendant as a low-level middleman in this conspiracy, who brought together suppliers and buyers and brokered cocaine sales.

At trial, the Government offered testimony from law enforcement officers who investigated the conspiracy and who had observed Defendant using coded language to coordinate narcotics transactions.  Lara-Tella and Reginald Statom, one of Defendant's customers, corroborated that Defendant arranged and brokered cocaine sales. Additionally, the Government offered wiretap recordings of telephone conversations, where Defendant scheduled and arranged drug deals.  Because these conversations were in Spanish and were intentionally cryptic, the Government provided English

2

translations of the conversations and explained the meaning of any coded language that Defendant used to conceal the true purpose of his calls.  Defendant, represented by David A. Cripps, countered that Lara-Tella and Statom were unreliable witnesses because their plea deals depended on their testimony against Defendant.  Additionally, Defendant claimed that the Government's wiretap evidence was misleading.  He argued that some Spanish words can have multiple meanings, and that the Government selected English translations that made his conversations seem incriminating.  Finally, Defendant asserted that there was no proof that he personally possessed drugs.  On November 19, 2009, a jury found Defendant guilty on all counts.

After Defendant's conviction, the court granted a motion for Cripps to withdraw as counsel.  William Winters represented Defendant at sentencing, where the court sentenced Defendant to 136 months' imprisonment.  The next day, Defendant appealed his conviction to the Sixth Circuit Court of Appeals.  With his appeal pending, Defendant sought to dismiss Winters as his counsel and the Sixth Circuit appointed Robert Jensen to replace him.  However, before ruling on Defendant's appeal, the Sixth Circuit granted Defendant's request to dismiss Jensen and determined that Defendant would proceed *pro se*.

On August 15, 2011, the Sixth Circuit affirmed Defendant's conviction and denied his request for counsel in an unpublished opinion.  *See United States v. Soler-Norona*, No. 10-2027, slip. op. at 6 (6th Cir. Aug. 15, 2011).  Thereafter, on October 15, 2012, the Supreme Court denied Defendant's motion for *writ of certiorari*.  *Soler-Norona v. United States*, 133 S. Ct. 490 (2012).

Defendant then filed the pending motions.

3

## II.  STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authority by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[§]2255 is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166.  Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the defendant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence of the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  Though non-constitutional errors are generally outside the scope of     § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a defendant can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process."  *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

4

### III.  DISCUSSION

Defendant raises seven claims of error.  In two of these claims, he argues that both his trial and his appellate attorney failed to provide effective assistance of counsel. In his other five claims, Defendant alleges that he did not receive a fair trial.

### A.  Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the first prong, Defendant must show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  The appropriate standard by which to judge an attorney's performance is "simply reasonableness under prevailing professional norms."  *Id.* at 688.  Under the second prong, a defendant must show that counsel's errors were prejudicial to the defense.  A defendant may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.* at 687.  A defendant must show more than "some conceivable effect on the outcome of the proceeding;" rather he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 693-94.  "In deciding an ineffective assistance claim, a court need not address the two components of the claim in any order, or even address both components if an insufficient showing is made on one."  *United States v. Cox*, 826 F.2d 1518, 1525 (6th Cir. 1987) (citation omitted).

5

Defendant argues that his sentence should be vacated because he received ineffective assistance of counsel from two of his attorneys.  First, Defendant claims that his trial attorney, David Cripps, failed to properly investigate his case and did not act as a vigorous advocate.  Second, Defendant claims that his appellate counsel, Robert Jensen, also failed to provide effective assistance of counsel because he did not meet with Defendant and allegedly did not raise meritorious issues on appeal.

### 1.  Ineffective Assistance of Trial Counsel

Defendant's arguments that his trial attorney, David Cripps, failed to provide effective assistance of counsel fall into two categories:  failure to prepare for trial and failure to act as a vigorous advocate.

### a.  Failure to Prepare for Trial

Defendant argues that Cripps failed to adequately prepare for trial in several ways.  First, Defendant asserts that Cripps blindly accepted the Government's translation of wiretap evidence, and was unprepared to address Defendant's translation concerns.  To the contrary, the record reveals that Cripps frequently raised the problem of mistranslations in his arguments.  In his opening statements, Cripps explained to the jury that words might be translated in ways that color their meaning.  (Dkt. # 180, Pg. ID 1380–81.)  Cripps also cross-examined Detective Miguel Chino extensively about how different Spanish words have multiple meanings.  (Dkt. # 162, Pg. ID 608–22.)  Cripps sufficiently addressed the issue of mistranslations at trial.

Second, Defendant contends that Cripps failed to prepare for trial because he did not give Defendant more time to review the Government's wiretap evidence, including audio recordings and transcript translations.  Defendant reasons that his own analysis

6

was critical because he speaks Spanish and Cripps does not.  The record indicates that Cripps reviewed the audio recordings and transcript translations from "beginning to end" with Defendant.  (Dkt. # 166, Pg. ID 996.)  Defendant confirmed that he had time to review all wiretap evidence.  *Id.*  Based on these facts, the court finds that Cripps gave Defendant sufficient time to review and analyze the wiretap evidence.

Next, Defendant claims that Cripps erred by not hiring an expert translator. Although Cripps was free to hire a translator, hiring one would not necessarily have been the professional norm.  *See Jones v. United States*, 08-CV-255-WDS, 2011 WL 4499573 (S.D. Ill. Sept. 27, 2011) ("The Court cannot help but add that it is absurd for petitioner to suggest he needed an expert to translate his own phone calls."). Regardless, the record indicates that Cripps adequately raised concerns about mistranslations without the aid of an expert translator.  Further, to satisfy the prejudice component of an ineffective assistance of counsel claim, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Defendant has not done so—his argument fails to demonstrate that by not hiring an expert translator, Cripps' effected the ultimate outcome of Defendant's trial.

Finally, Defendant argues that Cripps was unprepared for trial because he did not interview the Government's witnesses before trial.  Defendant asserts:

> Unfortunately, counsel did not investigate or interview any of the witnesses, in spite of the fact that Mr. Statom told counsel the reason why he had no other option, but to testify against Defendant, and the fact that there was a criminal case in Texas, whose named offender was Javier Lara.

7

(Dkt. # 202, Pg. ID 1627.)  Defendant essentially claims that interviewing the Government's witnesses would have revealed impeachment evidence, a claim discussed extensively in the next section.  Nonetheless, in this section, the court notes that it fails to see how this testimony would have aided Defendant in his defense, given the ample evidence the Government presented against him.  As an interview with Statom or Lara-Tella would not have revealed exculpatory evidence, Defendant suffered no prejudice.  *United States v. Jones*, No. 00-90036, 2010 WL 4822811, at *3 (E.D. Mich. Nov. 19, 2010).

Defendant's allegations that Cripps did not prepare for trial do not establish ineffective assistance of trial counsel.

### b.  Failure to Act as a Vigorous Advocate

Defendant also contends that Cripps failed to act as a vigorous advocate because he failed to challenge the validity and admissibility of the Government's wiretap evidence.  He alleges that police did not have probable cause to investigate his phone conversations because they did not know his precise identity at the time the wiretap was authorized, and instead identified a suspect named "Tacho."  He argues that his nickname is "Cubano," and therefore he could not be the "Tacho" referred to in the wiretap authorization.  The court does not agree.  An individual's nickname has little bearing on probable cause.  Moreover, one individual can have many nicknames; Defendant alone was nicknamed Norona, "Cubano" (Dkt. # 202-1, Pg. ID 1741), and "Peanut" (Dkt. # 166, Pg. ID 943).  Defendant's nickname had little relevance to trial proceedings or the viability of a wiretap authorization.

8

Next, Defendant argues that the wiretap authorization was improperly executed because it did not have the proper signature. Defendant does not offer sufficient proof to support his allegation that the wiretap was not properly executed. He offers an unsigned copy of the wiretap authorization, but this copy does not demonstrate that the original wiretap authorization was not properly signed. The court reasonably relies on the confirmation, made on the record at trial, that a district judge properly signed the wiretap authorization. (Dkt. # 164, Pg. ID 629.) Even if, *arguendo*, the court accepted that the wiretap authorization was not signed, there is caselaw suggesting that a clerical error would not invalidate the wiretap authorization. *See State v. Huguenin*, 662 A.2d 708 (R.I. 1995). Moreover, if the omission of a signature rendered the wiretap authorization invalid, police still executed the warrant in good faith and thus the wiretap evidence was still admissible under the good-faith exception. *See generally United States v. Watson*, 498 F.3d 429 (6th Cir. 2007) (holding that a clerical error did not render a search invalid due to the good faith exception). Finally, assuming that Cripps erred by not challenging admission of the Government's wiretap evidence, Defendant fails to establish that the evidence's admission effected the outcome of his trial.

Defendant next asserts that Cripps committed a serious error by not impeaching Javier Lara-Tella or Reginald Statom when they testified against Defendant. With respect to Lara-Tella, Defendant asserts that he faced prosecution in Texas. Yet criminal charges are improper for impeachment. *Fed. R. Evid. 609; Price v. Thurmer*, 514 F.3d 729, 731 (7th Cir. 2008). With respect to Statom, Defendant contends that Cripps should have impeached him with inconsistent statements he made about his relationship with Defendant and with information that the Government compelled Statom

9

to testify by threatening to prosecute his child's mother.  In fact, the record shows that Cripps did cross examine Statom about his inconsistent statements regarding his relationship with Defendant as well as his interest in protecting his child's mother.  (Dkt. # 166, Pg. ID 887.)  Relatedly, Defendant says that Cripps should have impeached the credibility of both Lara-Tella and Statom based on the fact that they were required to testify as part of their plea deals.  The record indicates that Cripps did just this.  Cripps highlighted Lara-Tella's and Statom's lack of credibility in his opening statement, cross examinations, and closing statements.  (Dkt. # 164, Pg. ID 734–49, 764–74, 860–61.) Throughout the trial, Cripps emphasized that Lara-Tella's and Statoms' testimonies were self-interested and therefore untrustworthy.  *Id.*  In his closing statement, he even concluded that "[n]either one of those witnesses are worthy of [the jury's] consideration beyond a reasonable doubt, which doesn't leave much to this case."  (Dkt. # 166, Pg. ID 862.)  Defendant's claim that Cripps committed serious error by not impeaching Statom and Lara-Tella has no factual basis.

Defendant's third claim—that Cripps failed to contest the *voir dire* of jurors on grounds that the trial judge insufficiently explored jurors' bias toward law enforcement—also lacks merit.  Defendant notes that ten jurors indicated ties to law enforcement and "the record proved that there were absolutely no intent [sic] to follow up on any of the questions or even a single inquiry to determine the position, bias, motives, prejudice or impartiality of the prospect [sic] jurors."  (Dkt. # 202, Pg. ID 1611.) This blanket assertion lacks specificity and is unsubstantiated.  The court therefore has insufficient grounds to evaluate Defendant's claim.  Nonetheless, the court notes that trial judges exercise wide discretion in the *voir dire* of potential jurors.  *See, e.g.,*

10

*Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981).  Based on Defendant's lack of evidence to substantiate his claim and considering the wide deference granted to judges when conducting jury *voir dire*, the court concludes that Cripps did not err by not contesting *voir dire.*

Defendant's fourth allegation fares no better than his first three.  Defendant argues that Cripps failed to object when the court inserted commentary into the jury instructions.  Specifically, Defendant argues that by stating, "I don't think that the evidence points in that direction in this case.  I don't think that's the scenario we have here," the court wrongly injected personal beliefs into jury instructions.  (Dkt. # 181, Pg. ID 1409.)  In making his claim, Defendant extracts two sentences *entirely* out of context.  The instruction as a whole states:

> One last point about conspiracy.  It's no defense to a criminal charge that success was impossible because of circumstances the defendant did not know about.  And that means that you may find the defendant guilty of conspiracy, even if it would have turned out that it would not have been possible to complete the crime that he agreed to commit.  This actually is more appropriate in circumstances where the police were surrounding the house and ready to swoop and mass arrests, and end the conspiracy right then.  That might have been impossible to carry out the aim of the conspiracy.  *I don't think that the evidence points in that direction in this case. I don't think that's the scenario we have here.*  But nonetheless, this is a true statement of the law about the impossibility of success not being a defense.

*Id.*  Given the context of the court's comments, it is clear that the court merely intended to explain to the jury the kind of case at issue.  Thus, the court did not insert inappropriate commentary into jury instructions and Cripps had no objection to raise and could not have been ineffective in this regard.

Finally, Defendant contends that Cripps failed to file a motion to sever Defendant's trial from that of his co-conspirators.  However, district courts only sever

11

cases when there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgement about guilt or innocence." *United States v. Martinez* 432 F. App'x 526, 529-30 (6th Cir 2011). Defendant fails to explain what grounds Cripps could have raised that would have justified severance. Moreover, Defendant does not establish that Cripps' failure to move for severance effected the outcome of the trial.

In a hearing regarding Defendant's request to terminate Cripps, the court explained that "[f]rom my observation at trial, I can't think of anything that [Cripps] did that is incorrect or created a problem for [Defendant] at trial." (Dkt # 158, Pg. ID 510.) The court maintains that opinion now. Defendant's claims do not satisfy *Strickland*, and accordingly, the court rejects Defendant's claim that his trial attorney, Cripps, did not provide ineffective assistance of counsel.

### 2. Ineffective Assistance of Appellate Counsel

Defendant claims that his appellate counsel, Robert Jensen, failed to provide effective assistance of counsel because he did not meet Defendant in person to discuss his case, frequently disagreed with Defendant about what issues to raise on appeal, and failed to raise meritorious issues on appeal. Each argument lacks merit.

Failure to meet in person does not constitute ineffective assistance of counsel. *Kerman v. United States*, 166 F. 3d 1214 (6th Cir. 1998) (finding no ineffective assistance of counsel when client and counsel did not meet in person but communicated through other means). Defendant's own exhibits demonstrate that he and Jensen communicated about his case via several letters. For example, Defendant

submited to the court one letter he sent to Jensen, in which Defendant mentions past

letters that he sent to Jensen.  (Dkt. # 202-2, Pg. ID 1823-28.)  Jensen's motion to

withdraw as counsel also corroborates that he communicated with Defendant via letters

and phone conversations.  (Dkt. # 202-2, Pg. ID 1820-32.)  Thus, the record refutes

Defendant's claim that Jensen failed to communicate with his client.

Defendant's argument that Jensen provided ineffective assistance of counsel by

frequently disagreeing with him about what approach to use on appeal does not warrant

relief.  "The Sixth Amendment does not guarantee a 'meaningful attorney-client

relationship."  *Dixon v. Warden*, *S. Ohio Corr. Facility*, 940 F. Supp 2d 614, 628 (S.D.

Ohio 2013) (citing *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  Clients are entitled to

representation, but they are not entitled to perfect agreement or even rapport with their

counsel.  *Id.*  Although Defendant frequently disagreed with Jensen's approach to the

appeal, this disagreement does not qualify as ineffective assistance of counsel meriting

§ 2255 relief.

Defendant does not substantiate his third claim that Jensen failed to investigate

his case and thus he cannot satisfy the *Strickland* standard.  However, Defendant

argues in a similar vein that Jensen failed to raise the following alleged issues on

appeal:  the improper admission of wiretap evidence, the insufficient *voir dire* of jurors,

the insertion of inappropriate commentary into jury instructions, and the incorrect

calculation of Defendant's sentence.  Although Defendant may view these grounds as

"dead-bang winners" (Dkt. # 202, Pg. ID 1637 (quoting *Coddington v. Langley,* 202 F.

Supp 2d 687, 698 (E.D. Mich. 2002)), Jensen did not commit any serious error by not

raising these issues on appeal.  As discussed *supra*, the court did not improperly admit

13

wiretap evidence, insufficiently *voir dire* jurors, or improperly instruct jurors.  A review of the record also reveals that the trial court properly calculated Defendant's sentence. Defendant's claims lack merit, and thus Jensen did not commit any serious error by not raising these issues on appeal.

Defendant has not shown that Jensen provided ineffective assistance of counsel. As such, Defendant's first two claims of error—that he received ineffective assistance of counsel from his trial attorney, David Cripps, and his appellate counsel, Robert Jensen—both fail.

## B.  Fair Trial Concerns

Defendant's remaining five grounds of error allege he did not receive a fair trial. First, he asserts that an unlawfully executed wiretap violated his Fourth Amendment right to privacy.  Next, he alleges that the Government unlawfully obtained wiretap evidence and that the court admitted this evidence improperly.  Third, Defendant argues that the trial court's *voir dire* of jurors failed to examine how a juror's feeling about law enforcement might affect their judgment.  Fourth, Defendant contends that the trial judge inserted inappropriate commentary while instructing the jury, essentially "piercing the veil" (Dkt. # 202, Pg. ID 1614) of judicial impartiality.  Finally, Defendant claims that because the indictment did not list the amount of cocaine involved in the conspiracy, he did not receive fair notice of the charges against him and the court incorrectly calculated his sentence.

14

The Government responds that Defendant procedurally defaulted on all five of these claims and that Defendant failed to assert "cause and prejudice" or "actual innocence" sufficient to overcome the procedural default rule. The court agrees.

### 1. Procedural Default

Section 2255 is not a substitute for direct appeal. *See United States v. Addonizio*, 442 U.S. 178, 184 (1979). For this reason, when a defendant does not raise a claim on appeal, he is generally barred from raising it in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 503 (2003).

The record does not contain any evidence that Defendant raised the five claims regarding his fair trial concerns on appeal. *See United States v. Soler-Norona*, No. 10-2027, slip. op. (6th Cir. Aug. 15, 2011). Still, Defendant asserts that he personally raised the first four issues on appeal, but that the Sixth Circuit failed to acknowledge the claims:

> Defendant intended to raise th[ese] issue[s] in a *pro se* supplemental brief, but it was too late. The Court of Appeals received the documents one day after its order and opinion. The court did not take into consideration the fact that the supplemental brief was submitted pursuant to the "Mail Box Rule."

(Dkt. # 202, Pg. ID 1564, 65, 67, 69, 71.) However, Defendant offers no evidence to prove that he wrote or sent *pro se* supplemental briefing for his appeal and thus the court must disregard his assertion. With respect to his fifth claim, Defendant admits that he never raised it on appeal because "[he] did not have superseding indictment's [sic] transcripts." (Dkt. # 202, Pg. ID 1577.) This explanation does not rebut the fact that Defendant did not raise this issue on appeal, effectively procedurally defaulting the claim.

15

Defendant has procedurally defaulted on all five of his fair trial claims.

## 2. Cause, Prejudice, and Actual Innocence

In order to overcome the procedural default rule, a defendant may show cause and actual prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998). To demonstrate cause and prejudice, a defendant must show that "some objective factor external to the defense," such as the development of new law, prevented him from raising the claim earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). A defendant must also show that not raising the claim substantially disadvantaged his case and infected his entire trial with error. *United States v. Frady*, 456 U.S. 152, 170 (1982). Alternatively, a defendant can overcome procedural default by proving he is actually innocent. *Bousley,* 523 U.S. at 622. Although a claim of actual innocence justifies an exception to procedural default, a defendant must establish actual innocence by demonstrating that no reasonable juror could find him guilty. *Id.* As such, claims of actual innocence are rare and exceptional. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Defendant offers two causes that he argues justify an exception to the procedural default rule. First, Defendant cites the incompetence of his appellate counsel as the cause that prevented him from raising these grounds in his appeal. To overcome procedural default, a defendant must show cause that is objective and external to his defense. *Coleman*, 501 U.S. at 753. Defendant's opinion that his appellate counsel was incompetent is quintessentially subjective. And, as discussed *supra*, it is an opinion that the court already considered and does not share. More importantly, counsel's strategic choices, made while providing effective assistance of counsel, do

16

not serve as cause sufficient to overcome procedural default.  *Murray*, 477 U.S. at 488.

Secondly, Defendant attempts to establish cause by pointing to his unconsidered *pro se*

brief and alleged lack of transcripts.  This explanation also do not establish cause

sufficient to overcome procedural default.  The timing of when *pro se* briefs were filed or

transcripts were requested was within Defendant's control.  As such, these choices are

internal to his defense and do not constitute an objective and external cause.  *See*

*McKCleskey v. Zant*, 499 U.S. 467, 498 (1991) (holding that a defendant's prolonged

investigation and late discovery of evidence is not an excuse sufficient to overcome

procedural default).  Defendant cites no cause that would justify an exception to the

procedural default rule.  Thus, the court need not consider any substantial prejudice to

Defendant's case.

Defendant does not directly claim actual innocence to justify why his procedurally

defaulted claims should be considered, but his motion contains suggestions of such a

contention.  Regardless, Defendant could not demonstrate that no reasonable juror

could find him guilty given the substantial evidence that the Government presented

against him (*e.g.*, the wiretap recordings wherein Defendant discusses drug deals and

his co-conspirators testimony that Defendant was involved in their large-scale drug

conspiracy).

The court concludes that Defendant procedurally defaulted on his fair trial claims.

 As such, Defendant's five claims of error alleging that he did not receive a fair trial all

fail.

17

### C.  Appointment of Counsel,
**Application to Proceed *In Forma Pauperis*, and Transcript Requests**

Defendant has also filed a motion for appointment of counsel, an application to proceed *in forma pauperis* (IFP), and two requests for trial court transcripts.  The court will deny the motion, application, and requests.

Under 28 U.S.C. § 2255 Defendant does not have a constitutional right to counsel when pursuing collateral attack upon his conviction.  *Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987) (citation omitted) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.") Instead, 18 U.S.C. § 3006A provides that the court may appoint counsel to a person seeking relief under 28 U.S.C. § 2255 if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  Considering that Defendant already benefitted from two court-appointed attorneys yet ample evidence supported the jury's decision to convict him, the court is not persuaded that the interests of justice require appointment of counsel. Defendant's Motion for appointment of counsel will be denied.

In addition to his motion for appointment of counsel, Defendant presents an application to proceed IFP and two motions requesting trial court transcripts.  Because any appeal from this action would not be taken in good faith and would be objectively frivolous, the Court will deny Defendant leave to proceed IFP on appeal.  See 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.  As for his transcript requests, under 28 U.S.C. § 753(f), a court may require the United States to pay for a transcript requested by a § 2255 movant:

18

> Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal *in forma pauperis* shall be paid by the United States out of money appropriated for that purpose if the trial judge or circuit judge certifies that the suit or appeal is not frivolous and the transcript is needed to decide the issue presented by the suit or appeal.

28. U.S.C. § 753(f).  However, any request for a free transcript prior to the filing of a § 2255 motion is premature and will be denied.  *United States v. Alcorn*, 10 F. App'x 248, 249 (6th Cir. 2001).  Defendant filed his transcript requests several months before his § 2255 motion and thus they were premature and will be denied.

Additionally, Defendant has not demonstrated a particularized need for the documents he seeks.  He merely asserts that he cannot afford the documents, that he is proceeding *pro se*, and that the deadline for his motion is quickly approaching.  (Dkt. # 198, Pg. ID 1548.)  He adds that transcripts would "[en]able him to act promptly and comply with the Court Rules and Statutes."  *Id.*  Instead of describing his specific needs for transcripts, it seems that Defendant merely speculates that there may be additional grounds upon which he could move to  vacate his sentence.  (Dkt. # 198, Pg ID 1548.)

> If the court is not given the benefit of some definite allegation as to the nature of the alleged illegal aspects of the judgment and sentences, it is but natural to surmise that this is a fishing expedition and that the present vague allegation of illegality is not made in good faith.

*Culbert v. United States*, 325 F.2d 920, 922 (8th Cir. 1964) (quoting *United States v. Lawler*, 172 F. Supp. 602, 605 (S.D. Tex. 1959); *see also Bentley v. United States*, 431 F.2d 250, 252 (6th Cir. 1970) (explaining that a defendant is not entitled to free transcripts to search for grounds to file a motion under § 2255).  Accordingly, Defendant's IFP application and transcript requests will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a Certificate of Appealability (COA) is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The "substantial showing" threshold is satisfied when a defendant demonstrates "that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, the court concludes that reasonable jurists would not debate the court's assessment of Defendant's claims.  Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

For the Reasons stated above, IT IS ORDERED that Defendant's motion to vacate sentence (Dkt. # 202) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for appointment of counsel (Dkt. # 200) is DENIED.

IT IS FURTHER ORDERED that Defendant's application to proceed *in forma pauperis* (Dkt. # 201) is DENIED.

IT IS FURTHER ORDERED that Defendant's requests for court transcripts (Dkt. ## 192, 198) are DENIED.

20

Finally, IT IS ORDERED that a certificate of appealability is DENIED as to all of
Defendant's claims.

  s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 23, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 23, 2014, by electronic and/or ordinary mail.

  s/Lisa Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522